The Lower Brule Sioux Tribe is a federally recognized Indian tribe that reserved its right to self-government under the Fort Laramie Treaty of 1868. It has a nation-to-nation relationship with the United States and the United States is committed to providing programs and services to the tribe and its members. Both the United States and the tribe are responsible for providing government programs and services to ensure the health, safety, and welfare of the tribe and its members. And for its part, the tribe carries out those responsibilities in different ways. First, it contracts with the United States under the Indian Self-Determination and Education Assistance Act to provide various programs. And second, it also contracts with the United States under the Tribally Controlled Schools Act to provide education at tribally controlled schools. These are functions that the tribe has contracted both under ISDIA and TCSA to perform functions that otherwise would be performed by the United States. This case arises out of the tribe's use of TCSA dollars to fill temporary gaps in funding for programs the tribe administers under ISDIA. The federal government, there were routinely delays in the federal government's provision of ISDIA revenue to the tribe. And by contrast, the Tribally Controlled Schools Act revenue was paid in advance and in a timely manner. And for a period of several years, the tribe used, borrowed against its TCSA money to fund gaps in its ISDIA funding. For many years, in fact, the record demonstrates from 2012 to 2015, the Bureau was aware of this practice, and it did not issue adverse findings or bills of collection for the use of funds in that manner. The tribe always replenished the TCSA funds when its ISDIA money came in. So these were short-term loans, in a sense, between one federally funded program and another. And secondly, the tribe for many years demonstrated to the satisfaction of the Bureau that the funds that were advanced were fully collateralized by cash and other assets. However, in 2016, the Bureau did start issuing findings and determinations. And ultimately, in 2017, issued a finding that the tribe misused approximately $3.7 million. Now, you mentioned that the tribe paid this back, but I noticed that, at least in the record, it shows, for example, that the 2016 and 2017 were added together for a total deficit of nearly $10 million. That does not suggest that there was any payback that occurred. I don't know that they were added together, Your Honor. I know that there was some duplication between 2016 and 2017, so the 2017 notice, in essence, supersedes. And in the 2018 notice, the corrected notice, they found, again, that there was duplication, and so there was no additional collection. The total amount at issue is $3.7 million, of which about $2.6 million has been collected and applied to the amount of the loans. The remaining balance of the alleged debt is about $1 million, Your Honor. The evidence in the record includes audited financial statements, including from 2020, which demonstrate no active year deficit in TCSA funding and also a substantial reduction in the overall deficit. The audited financial statements from succeeding years demonstrate full repayment or replenishment of the TCSA fund by the tribe, such that all of the money has been repaid to the program. And the audited financials also show expenditures by the tribe for allowable expenses under the TCSA grant. So what we're left with is a case that, for the tribe, is worth $3.7 million, plus or minus, resulting from its borrowing against one pot of federal money to adjust and deal with delays and shortfalls in timing of other funding. And it would work an injustice to require the tribe to take this money away from programs it needs to provide basic services. So you're dealing with issues of the merits and the policies involved here. But didn't the district court resolve this on time limits? It did. And, Your Honor, the court found that the tribe didn't file its complaint within one year after the notices at issue. However, our argument is, and I think this was encompassed in the arguments in the district court, that the notices, the final notices of findings and determinations, were inadequate. And in particular, I think the focus here is on the 2017 notice, at least the government's focus, because that really sets forth the one notice for which the bills of collection have issued. And in that notice, the government did not fully advise the tribe of the sanctions, and it did not fully advise the tribe of its appeal rights. And it's well settled both in this circuit and in other circuits, including the federal circuit, that where an administrative agency notice fails to notify a contractor or a party of their appeal rights, such that they can adequately protect their interests, then it is defective. And that is as a matter of law. What about the 2019 report? You talked about the 2017. But what about the 2019 report? How does that change the analysis? The years 2019 and following are the subject of a separate case, which is before the Civilian Board of Contract Appeals. I thought the 2019 report was where we nailed down the $3.7 million figure. Is that right? Your Honor, I'll have to look again, but I think it may have been the 2017 is where.  And then I think this case is about 16, 17, 18. Thank you. Counsel, I just wanted to ask you to follow up on Judge Smith's question. I'm not sure that the absence of saying that you can file a district court action makes a difference, because we're talking about jurisdiction. And so, for example, if our clerk of courts doesn't tell somebody that they have the right number of days to appeal, it's not as if we could just say, oh, well, we're going to excuse that and allow you more time. And so we're talking about sovereign immunity. So I guess I don't understand what the deficiency of the notice has to do with anything. I would agree that certain failures on the part of an appellant are perhaps not waivable or errors from which you cannot recover. But I don't think this is one of them. I think the case law is well settled that where a notice of appeal rights is defective, then it does not start the clock running. Does it matter if the notice is not the cause or the absence of notice? That gets to the issue of whether detrimental reliance is required, and I don't think the cases suggest that it is required. However, on the issue of- In this record, it seemed to be that the comptroller and the tribal comptroller was aware of what was taking place and what was at issue. I do think, and we cite this in the full quote of her deposition in the reply, that she was aware, but they were not aware of the sanctions that would be imposed. They thought it was going to be payment restrictions, and as long as it was payment restrictions, they decided not to appeal, but later learned that it was going to be a bill of collection. So the sanctions weren't fully explained in the notice, and the appeal rights weren't fully explained. And I do think there's ample authority for this court to remand to the district court to say, look, the notices were defective. Let's go back and see what are the facts. Has the tribe fully replenished these funds? Help me, though. So I'm still struggling because, and maybe you have cases, but equitable tolling, which is kind of what this is, saying it's not our, you know, it's the other party's fault, it's not our fault, tends to not be available in jurisdictional situations. In other words, we lack the power. It's the power of the judiciary. And so I just can't figure out how a deficient notice, when this is, I think it's in Federal law, right? In the Federal statute, it says that you have this right to file an action. I cannot figure out how that allows us to have the power to consider a case that's beyond, you know, where sovereign immunity applies. I think there's no question that there is a waiver of sovereign immunity. I appreciate your question, although I do think the Eighth Circuit has held in the Atikala case. That's your best case? That's Eighth Circuit. There are cases from the Federal Circuit, including Decker, and from the Court of Federal Claims, Uniglobe, and RMA. There's a Western District of Missouri case, and in all of these, called Cuffee, and in all of these cases, the courts held that where a notice is deficient or defective, that it does not start the time. In this context with sovereign immunity? They were in a number of different contexts. The Court of Federal Claims cases, yes, Your Honor. Those involve claims by contractors against the United States. So that's why, you know — And there's no different language in those? Because I could see one that says we waive our sovereign immunity, we give only a year, but if something keeps you from filing a claim or something like that, then we're going to — and that would be a different case. Right. I'm not aware of any language like that in a statute or even a regulation, if the agency could waive immunity, which I don't think it can. So I think that it's — I think that they're on all floors. And I think to the extent the court is interested in detrimental reliance, it can look at what the tribe's comptroller said. We did rely on that notice, that it would be payment restrictions. And so we're asking the court to write an injustice to the tribe, a $3.7 million injustice, when you're talking about the tribe contracting to perform federal functions and services in different areas and using money from one area to deal with short gaps, shortfalls in funding in another. There was no misuse or misspending or theft or any improper use other than borrowing from one fund to fund the other and then replenishing. And although it may be somewhat novel, we do think the notice was defective, and it would allow this court to remand for full consideration of the case on the merits in the district court. Thank you. Thank you. No, go ahead. I was just going to remind you about your — Yes. Thank you.  Ms. Ramsdale. Good morning, Your Honors. May it please the Court and Counsel. My name is Allison Ramsdale, and I'm here on behalf of the United States asking this court to affirm the lower court's decision, first granting the motion to dismiss the original complaint and then granting summary judgment in favor of defendants on the amended complaint. Central to this case is whether the district court had subject matter jurisdiction over Plaintiff's claims, and the answer at the outset of this case is the answer today. The district court did not have jurisdiction over these claims. Generally speaking, the United States is immune from suit absent a waiver of sovereign immunity, and those waivers must be unequivocally stated and strictly construed in favor of the sovereign. You know, you heard a proposing counsel say there's all this case law, including from the Eighth Circuit, that says a defective notice is an excuse, that it basically, you know, the waiver continues. What's the response of the United States on that? Well, the case that plaintiffs rely on, RMA Engineering, does say what he says, which is a defective notice. Let me get the exact quote for you. When a contracting officer's final decision does not afford a contractor adequate notice of appeal rights, that notice is defective and does not trigger the running of the limitations period. But that case goes on to analyze a claim much like this one, where the plaintiff says the notice was defective because it simply told us that we can appeal under the disputes clause. And the disputes clause referred to the Contract Disputes Act, and that was insufficient. Did it also say 12 months, counsel? It did. So it said 12 months. No, it did not say 12 months as far as I'm aware. Okay. I'm trying to find it in the district court. Are you talking about the notice here or in RMA Engineering? No, I'm talking about the notice in this case. The notice in this case said 12 months. Yeah, I thought it did. That's what I was driving at because I had the district court opinion here. And pardon me if I interrupted your discussion of that case, but it triggered my mind. It did say 12. Tell me what the notice said. The notice in this case? Yes. All right. There's a three-paragraph notice. Uh-huh. The third paragraph. You can summarize it, of course. At the end of the third paragraph, after it talks about appealing to the Civilian Board of Contract Appeals, the 90 days, it says, Instead of appealing to the CBCA, you may bring an action directly in the U.S. Court of Federal Claims within 12 months of the date you received this decision. And then it cites three statutes. So I think plaintiff's issue is that it doesn't also say federal district court. The district court, yeah. And that's why I draw your attention to RMA Engineering because those plaintiffs made a similar claim. The notice just referenced the dispute clause. And the court in RMA Engineering found that a lack of familiarity with the process did not excuse noncompliance. It further went on to quote a Sixth Circuit case in saying, The parties to a government contract are charged with knowledge of law and fact appropriate to the subject matter, and reasonable professional competence in reading and writing contracts is presumed. And so What would it have pointed those three statutes? Would any one of them have pointed to the district court option? Yes. The second statute, 25 U.S.C. Section 450M-1, takes you right to the waiver in the ISDEAA, the Indian Self-Determination Education Assistance Act, where it sets forth that the United States district courts have concurrent jurisdiction with the court of federal claims over any civil action or claim for money damages arising under contracts. So we would have to, I think we would have to say here that you need to be even more specific and that at least the ignorance of the law or the ignorance of, the unwillingness to look up in the statute books, maybe we shouldn't expect people to, but the unwillingness to do that is what caused, what caused the non-filing here. I'm just trying to figure out what the, yeah. That is what you would have to conclude. Yeah. This waiver is limited, right? It's limited in time. And the ISDEAA conveys that through the incorporation of the Contract Disputes Act, which sets forth these three options. Well, the CDA sets forth two options, and then the ISDEAA adds this third option with the district court. Is this a standard form that they use in the agency where, I mean, it seems kind of silly not to list the district court if it was standard. Maybe it is or maybe it isn't. I'm just curious. I can't speak to what's standard across the agency. I believe this language has existed in another appeal notice that I've read.  So you had asked if the decision was a 2019 decision. Well, it was a 2019 report. I had my notes. That's right. Tell me about the 2019 report because I thought that was. The 2019 report relates to the fiscal year 2017 audit. So it is undisputed that that audit was filed by the tribe in November of 2018. It's undisputed that the BIA's awarding official issued its final decision sustaining these questionable costs in March of 2019. And so I think that's the final report you're referring to. Thank you. And that report indicated this appeal notice. It also set forth that this decision was final, and it included that number, $3,679,223 in questionable costs. By March of 2020, which would have been the 12-month deadline, no appeal had been filed. To the contrary, the tribal comptrollers indicated that they had no disagreement with this finding. Can I ask you about the money? I had asked opposing counsel about this, but my understanding was the 2018 report was something like $6 million something or other, and then the 2017 report was the $3.7 million. And somewhere in the record, I saw that adds up to $9 million. And I just want to make sure, but you're only trying to collect $3.7 million, which I think is the 2017 report. Just help me with the numbers in the reports. I don't recall what the 2016 debt was. I know in 2017, the amount we're collecting, the amount that was referred to the Treasury in December of 2020 was this $3.7 million. And the 2018, which was, I don't know, $6 million something? The 2018 was the report that we ended up retracting. I see. Because we found that it was a duplicative finding. I got it. Thank you. Yeah. So because they did not appeal by March of 2020, a bill of collection issued in June of 2020. A Dunning notice followed in August of 2020, which said you have 30 days to respond or we're going to refer this debt. And because the tribe did not respond in December of 2020, this debt was referred to the Treasury. And what followed was 47 offsets by the Treasury Department to get us to this current debt of $1,013,873.36. And so everything from the beginning of this lawsuit and through the arguments made today by the plaintiffs is really just this veiled attempt, as the district court said, to get around the statute of limitations the tribe failed to comply with. Many courts have talked about this statute of limitations. Again, in RMA Engineering, the case cited by plaintiffs, the court said a failure to file within the prescribed time period is fatal to a contractor's claim. Now, was that affirmed by the First Circuit? Is that the one case? Do I have my cases confused? I don't know. I can't answer that. No, it's the Jayway case. I'm sorry. Go ahead.  The Federal Circuit Court of Appeals said it another way in Renda, Marine, Incorporated v. United States. That's at 509 F3D 1372, a 2007 case affirming a six or quoting a Sixth Circuit case. Absent commencement of such review within the prescribed period of time, the decision becomes impervious to any substantive review. And the Supreme Court, of course, has talked about this in other contexts, such as the PRLA, when it said failure to exhaust is not excused when it's statutorily mandated. Yet here we are talking about overcollection, talking about failure to give adequate notice of appeal rights, equitable estoppel. And, again, I would submit that those are all attempts to challenge a 2017 or 2019 finding on a 2017 audit that they failed to challenge within the one year they were given. Is there a discovery type rule in this context? So when you have a statute of limitations, you know, if you don't discover the injury or discover the error or whatever and a reasonable person couldn't discover, and maybe that's the problem, then the statute of limitations tolls. Is there any such thing here? So a reasonable person wouldn't discover what? Discover whatever their claim is. That's how, just it's basically how statute of limitations work. I'm just wondering if there is a discovery rule here. I'm not aware of such a rule. I think we see all these ideas of ways to challenge the 2017 audit now, but I think you were given a year to come up with those challenges. You were given many notices, many letters went to the tribe that were received by the tribe, and there was just a failure to raise the issue until 2021 when this lawsuit was filed. The main argument of the tribe is that the government has overcollected on the 2017 claim. So in 2020 the tribe realized that it could go back, and for the nine prior years they had a number of indirect costs from their schools that were ascribed to the general fund. And so by instead having those indirect costs expensed to the TCSA grant, they could go back and make these prior period adjustments, thus creating a smaller debt and making the current collection an overcollection. This is pretty convoluted, and it comes, it's an argument that is not backed up by any receipts. We see no evidence of how that came. Was it backed up by an auditor or an accountant's report? I believe their 2020 audit report had this theory in it, but it was not substantiated with how they came up with these indirect costs. Those are typically negotiated. But they were made in the financial statements, the prior period adjustments. That's an accounting term. They were made to the prior, yes, prior statements. We also heard an argument about equitable estoppel. The district court pointed out that to make that claim, you have to fulfill the traditional elements of an equitable estoppel claim, that one party made a definite misrepresentation of fact, having reason to believe that the other party would rely on it, and then that the other party did rely on it to their detriment. Here we have neither. There was no definite misrepresentation of fact, and there was no detrimental reliance by the tribe. Was it discussed by the district court as to whether this time period was a jurisdictional bar or claims processing? What was the second part? Claims processing deadline that could be mandatory but not necessarily jurisdictional. The district court indicated that it was jurisdictional, and it's the grounds on which it dismissed the original complaint and granted summary judgment on the amended complaint. I think even more fatal to the equitable estoppel claim is the Supreme Court's holding that equitable estoppel cannot apply against the United States in a suit to recover public funds. Is that broadly stated by the Supreme Court? That is how it is stated. Thank you. And that's in the Office of Personnel Management v. Richmond, 496 U.S. 414. Is that case in your briefs? It is in the district court's decision on the summary judgment motion. Okay. Lastly, the district court raised this issue, and it's an understandable issue to grapple with. How is this fair? What will the tribe do given that this is an enormous debt and we need to continue funding these programs? The Debt Collection Act and federal claims collection standards provide a mechanism for requesting a debt compromise with the ultimate authority with the Department of Justice. The tribe has yet to avail themselves of this process, but it remains available to them. Can Treasury do up to a certain amount, or does it necessarily involve Justice? And if you don't know, it's a field. They may be able to. Given this amount, it has to go through the Department of Justice.  All right. If there are no other questions, I would ask that this case end where it began, with a determination that the district court did not have and therefore renewing my request that this court affirm the district court and its judgment in its entirety. Thank you. Thank you, Ms. Ransdell. Mr. Gunn, your rebuttal. Thank you, Your Honors. And I'm glad we were able to clarify the 2017 versus 19. The date of the findings was in 19, but it pertained to fiscal year 2017. And Judge Strass, you're right that the 2016 did find a $6 million plus or minus, and they actually did issue a bill of collection but later suspended it, and then the Bureau decided to tack that debt to the allegedly owed debt pursuant to the 2016 findings and determinations to any bill of collection issued for FY 2017. And then similarly in 2018, they essentially consolidated it all with 2017. I see. So I understand that there are certain jurisdictional time periods to take an appeal. However, no one would suggest that an agency decision with no notice of appeal rights would be sufficient or an agency decision with patently incorrect notice of appeal rights would be correct. And in this case, you have an incomplete statement of appeal rights that you can either take it to the CBCA or take it to the Court of Federal Claims in D.C. And many tribes don't have attorneys that are licensed in that court, or it may present impediments. But it did not say that they could appeal to the district court. What about the fact that the statute contained the – directed them to the reference to the district court? I understand it didn't appear in the notice, but if you look at that statute, you could have figured it out. The statute is the ISDEA statute, which is incorporated by reference into the CDA, which is in turn incorporated by reference in the TCSA. And we think that when the express language of the notice says you can appeal it to one court, you know, a string site of different statutes does not clearly indicate the right to appeal in the local district court. Is there a record to indicate the reason there was no appeal was the absence of the knowledge to go to federal court? I mean, it seems like there could be an inference that there was just a decision not to appeal, regardless of where that appeal would have been lodged. I do think that to the extent there is evidence in the record about the decision, it is from the comptrol and it relates to the fact that the notice said there would be payment restrictions, but not the bill of collection. Thank you.